IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

REGINA DEBRA FARRESTER

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

Case No. 3:17-cv-00251-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Regina Debra Farrester brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Acting Commissioner of Social Security ("Commissioner"). The Commissioner found plaintiff not disabled under the Act and denied her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff applied for disability insurance benefits in July 2011, alleging disability since September 2010 due to tumors, high blood pressure, fatigue, cysts, migraines, vision impairment, depression, and anxiety. She suffers from ongoing pain from lipomas and lipoma[1] removal. She has reported problems with labile blood pressure, experiencing blood pressure spikes and drops with "multiple episodes of passing out." Tr. 1290. There is no diagnosed cause of the blood pressure problems, but doctors have suggested it is possibly stress and anxiety related and is "also probably complicated by her alcohol use." Tr. 1369. After an unfavorable first decision by the ALJ and remand by the Appeals Council, plaintiff appeals another unfavorable decision. The Appeals Council denied review of the present decision.

## STANDARDS OF REVIEW

"An ALJ's disability determination should be upheld unless it contains [harmful] legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)) (internal quotation marks omitted). The record must be evaluated as a whole, and the court must weigh "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" *Id.* The court "may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court

---

[1] A lipoma is a bundle a fatty tissue "most often situated between your skin and the underlying muscle layer." *Lipoma*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/lipoma/symptoms-causes/syc-20374470 (last visited Feb. 27, 2018). They are generally benign but may be removed if they cause discomfort or pain. *Id.*

2 – OPINION AND ORDER

may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

"The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ found plaintiff has not engaged in "substantial gainful activity" since the alleged disability onset date of September 1, 2010. Tr. 14; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found that plaintiff had "the following severe impairments: history of lipomas with residual pain, reactive hypertension, anxiety disorder NOS, and alcohol use disorder[.]" Tr. 14; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 14; *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

The ALJ found that

> *including the substance abuse disorder*, the claimant has the residual functional capacity [("RFC")] to perform a range of light work as defined in 20 C[.F.R. §] 404.1567(b) except she can perform tasks involving no more than 6 hours of standing/walking, and no more than 6 hours of standing/walking, and no more than 6 hours of sitting in an 8-hour workday (with normal breaks). She can occasionally climb stairs or ramps, but she must avoid climbing ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She is limited to low-stress jobs that avoid assembly line pace. Such jobs may involve

few, if any, workplace changes. She can be expected to engage in little, if any, independent decision making in her work duties. She must not be responsible for the safety of others. She must avoid driving. She must avoid even moderate exposure to workplace hazards, such as unprotected heights and moving machinery. She is limited to simple routine work tasks that do not exceed a specific vocational preparation (SVP) level of 2, or a GED reasoning level of 2. Due to the effects of mixed medication and alcohol, the claimant would likely be off-task in even simple work tasks more than 10% of the workday, and will likely miss work several days each month.

Tr. 16 (emphasis added). At step four, the ALJ found that plaintiff could not "perform any past relevant work." Tr. 20; *see also* 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the ALJ concluded that there were no jobs in the national economy that plaintiff could perform and subsequently found plaintiff disabled. *Id.* at 20-21; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ then reevaluated plaintiff's RFC to determine whether plaintiff's drug or alcohol abuse ("DAA") was material to the disability determination. The ALJ decided that, if DAA were not an issue, plaintiff's residual functional capacity ("RFC") would remain the same except that she would no longer miss several days of work each month or be off-task more than ten percent of time. Tr. 21. With those limitations eliminated, the ALJ found that "there would be a significant number of jobs in the national economy that the claimant could perform[,]" including soft goods sorter, clerical checker, and folder. Tr. 23. Finally, the ALJ concluded that, because DAA "is a contributing factor material to the determination of disability[,]" plaintiff is not disabled. *Id.*

## DISCUSSION

On appeal, plaintiff raises two arguments: (1) the ALJ improperly weighed the evidence from Dr. Delamater, plaintiff's primary care physician, and (2) there is insufficient evidence in the record to deem alcohol use a material factor in the disability determination.

I. *Dr. Delamarter*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. *Garrison*, 759 F.3d at 1012. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Delamarter has been plaintiff's primary care provider since February 2014. In December 2015, at the request of plaintiff's counsel, Dr. Delamarter completed a questionnaire in which she described plaintiff's limitations and symptoms ("December 2015 Assessment"). Dr. Delamarter noted that plaintiff suffers from "anxiety, labile hypertension, [and] vasovagal syncope." Tr. 1416. Plaintiff's primary symptoms are "passing out, palpitations, [and] panic attacks." *Id.* In Dr. Delamarter's opinion, plaintiff is limited to lifting a maximum of 10 pounds occasionally, lifting no weight frequently, standing or walking for 20 minutes at one time, standing or walking for one hour in an eight hour workday, sitting for 20 minutes at one time, and sitting for one hour in an eight hour workday. Tr. 1417. Dr. Delamarter tied her opinion regarding plaintiff's limited ability to sit, stand or walk to "frequent passing out, and labile hypertension[.]" *Id.* Further, because plaintiff "has more passing out when she exerts herself & blood pressure becomes dangerously high," she can climb, balance, stoop/bend, kneel, crouch, crawl, reach, handle, use fine manipulation, and feel no more than occasionally. *Id.* When asked

to "comment on plaintiff's ability to handle workplace stress[,]" Dr. Delamarter responded that plaintiff "has severe anxiety, stress causes panic attacks, elevated blood pressure & syncope[.]" Tr. 1418. Because plaintiff's hypertensive and syncopal episodes "can happen at rest[,]" Dr. Delamarter expects even simple work-related tasks to increase plaintiff's symptoms. *Id.* Lastly, Dr. Delamarter expected plaintiff to be off task twenty percent of a standard workweek and to miss at least sixteen hours of work per month because her "symptoms are very frequent." *Id.*

The ALJ gave Dr. Delamarter's opinion "little weight" for three reasons: (1) The December 2015 Assessment is inconsistent with Dr. Delamarter's treatment notes, (2) the December 2015 Assessment is inconsistent with the record as a whole, and (3) Dr. Delamarter conspicuously omitted any discussion of plaintiff's DAA. Tr. 19. Because Dr. Delamarter's opinion conflicts with the opinions of other physicians in the record, the question is whether those reasons are specific, legitimate and supported by substantial evidence. *Garrison*, 759 F.3d at 1012.

In his decision, the ALJ noted inconsistencies between Dr. Delamarter's treatment notes and her December 2015 Assessment. First, the ALJ cited a patient note from June 2014 where Dr. Delamarter noted that plaintiff's heart rate had been normal "every time she has been here[.]" Tr. 1332. The ALJ also noted that, according to Dr. Delamarter, plaintiff did not qualify for a disabled parking pass and that plaintiff could "walk well." *Id.* The ALJ found those treatment notes inconsistent with the December 2015 Assessment, in which Dr. Delamarter "reported . . . that the claimant's symptoms of passing out, palpitation, and panic attacks would prevent her from lifting/carrying 10-pound items, or from sitting, standing, or walking for more than 2 hours in an 8-hour workday." Tr. 19 (internal quotation marks omitted). The ALJ's conclusion that the December 2015 Assessment is inconsistent with the cited treatment notes mentioned is

rational. Although the medical records document several instances of high blood pressure, none of those instances are from Dr. Delamarter's treatment notes. In fact, plaintiff's blood pressure results appear to have been within the normal range during almost every visit to Dr. Delamarter. In the December 2015 Assessment, Dr. Delamarter suggested plaintiff could only walk twenty minutes at a time, and walk for a total of one hour in an eight hour workday. Tr. 1417. That clearly differs from Dr. Delamarter's treatment note from 2014, in which Dr. Delamarter says plaintiff "request[ed] a disabled parking permit . . . even though she is able to walk well." Tr. 1332. If a person can "walk well," they can arguably walk more than twenty minutes at a time. Moreover, Dr. Delamarter doesn't explain why her opinion changed between the times of the treatment notes and the December 2015 Assessment.

The ALJ also found other portions of the medical record inconsistent with the December 2015 Assessment. The ALJ noted records from January 2016 documenting that plaintiff "presented with normal breath sounds, along with regular heart rate and rhythm [and] exhibited full range of motion in all extremities, with not deficits in motor strength." Tr. 19 (citing Tr. 1480). In that same record, "medical imaging of the claimant's chest revealed no sign of active cardiopulmonary disease." *Id.* A treatment note by Aaron Lee, P.A.-C, described, "EKG is reviewed by myself and Dr. Delamarter. Rate is 61 beats per minute, normal sinus rhythm, normal intervals, normal axis, and normal R-wave progression. No ST-segment changes. Computer report states non-specific T-wave abnormality. Dr. Delamarter and I do not agree with that reading." Tr. 1335. It was rational for the ALJ to find those notes inconsistent with the December 2015 Assessment. While it is possible that plaintiff may be suffering from symptoms without an identifiable source, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported . . . by objective medical findings." *Batson v. Comm'r of Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The December 2015 Assessment denoted substantial hypertensive and syncopal symptoms accompanied by very limited physical abilities. Tr. 1416-1418. That differs from a treatment summary in January 2016, which states that plaintiff presented no cardiovascular irregularities and a full range of motion in her extremities. Tr. 1480-82. Those reports are very close in time but present very different symptoms. Further, a February 2015 CT scan of plaintiff's chest returned "essentially negative." Tr. 1298. The ALJ reasonably found the above records inconsistent with Dr. Delamarter's debilitating December 2015 Assessment.

Lastly, the ALJ found Dr. Delamarter's omission of any mention of plaintiff's polysubstance use concerning. *See* Tr. 19. ("It is also apparent that Dr. Delamarter ignored evidence of the claimant's history of polysubstance abuse."). Indeed, none of Dr. Delamarter's treatment notes or the December 2015 Assessment make mention of alcohol or substance use. Plaintiff argues that "the . . . rational explanation [for that omission] is that Dr. Delamarter did not find alcohol abuse to be a significant factor in rendering her opinion." Pl.'s Opening Br. 7. While that favorable interpretation may be rational, for the reasons below the ALJ's interpretation is also rational. Alcohol abuse is mentioned repeatedly throughout the record. Further, on at least three instances, doctors suggested a link between the alcohol use and plaintiff's symptoms. With all of this mention of alcohol, it is certainly unusual for Dr. Delamarter, plaintiff's primary care physician, not to mention it when it appeared to be relevant enough for other doctors to repeatedly include it in the medical record.

In sum, the ALJ noted specific and legitimate reasons for giving Dr. Delamarter's opinion little weight by pointing to inconsistencies between Dr. Delamarter's treatment notes and the December 2015 Assessment, citing legitimate conflicts with other documents in the medical

record, and reasonably questioning the validity of an assessment that completely ignored plaintiff's substance abuse disorder. Accordingly, I affirm the ALJ's decision on this issue.

II.  *Materiality of Drug and Alcohol Use*

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). "[A] claimant cannot receive disability benefits 'if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)). The ALJ must conduct a DAA analysis to determine which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. *Id.* at 747 (citing 20 C.F.R. § 404.1535(b)). If a claimant's remaining limitations are still disabling, the claimant's DAA is not a contributing factor material to her disability. *Id.* Conversely, if the claimant's remaining limitations are not disabling, the claimant's DAA is material and benefits must be denied. *Id.* It is plaintiff's burden to establish that she is still disabled without the DAA. *Id.* at 748.

While the second RFC calculation was largely similar to the original, the ALJ found that, without DAA, plaintiff would no longer be off-task 10% of time and would be less likely to miss work. *Id.* It was that finding that changed the ruling on plaintiff's disability status as there were now jobs in the national economy that she could perform.

The question is whether substantial evidence supports a finding that DAA materially affected the calculation of plaintiff's residual functional capacity. Plaintiff asserts that her symptoms became disabling on September 1, 2010. Plaintiff went to the emergency room within one month of that date, on September 30, 2010. She had been arrested, was "quite intoxicated,"

and sought help with a "panic attack" and "documentation of all her old bruises and scratches and abrasions." Tr. 488. The ALJ highlighted these two dates, explaining "the alleged onset date in this matter approximately coincides with complaints of anxiety and shortness of breath accompanied by obvious alcohol intoxication." Tr. 17. A 2014 hospital visit documented "problems with labile blood pressure, chronic pain, and anxiety – but noted that [plaintiff's] primary diagnosis was altered mental status secondary to combining benzodiazepines, opiates, and alcohol." Tr. 18 (citing Tr. 1286). Further, a hospital visit in 2016 showed cardiovascular normality, but revealed that plaintiff was confused and demanded medication. *Id.* (citing Tr. 1450). When she was refused due to alcohol use, she left the facility "against medical advice as soon as she was able to walk independently." *Id.* That same treatment note reports that plaintiff has "drug seeking behavior" and leaves against medical advice "frequently." Tr. 1450. Additionally, a physician also noted "I suspect that her low blood pressure likely worsened from polypharmacy alcohol use." Tr. 1471. In short, the record amply supports a link between plaintiff's blood pressure problems (and attendant symptoms) and her DAA. The ALJ reasonably concluded that, without DAA, plaintiff's symptoms would improve and she would be less likely to miss work or be off task. Because substantial evidence supports the finding that DAA materially affected the calculation of the differentiated RFC, the decision is affirmed.

Plaintiff submits that "there are also more occurrences of [plaintiff's] dramatic blood pressure variations in which no alcohol is noted." Pl.'s Opening Br. 8. It is true that some medical records document blood pressure problems without mentioning DAA, but there is nonetheless substantial evidence in the record to support the ALJ's conclusion. As explained above, medical records repeatedly posit a link between plaintiff's alcohol use and her blood pressure complaints. Therefore, it was permissible for the ALJ to find DAA was material to

plaintiff's disability. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.).

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 13th day of March 2018.

Ann Aiken
United States District Judge